Janiece S. NOLAN, Ph.D., Plaintiff,

v.

Joseph Maxwell CLELAND et al., Defendants.

No. C 78–1504 CFP.

United States District Court, N. D. California.

Dec. 20, 1979.

Robert L. Nolan, M. Colleen Clancy, Oakland, Cal., for plaintiff.

G. William Hunter, U. S. Atty., Deborah M. Seymour, Asst. U. S. Atty., San Francisco, Cal., for defendant.

## MEMORANDUM AND ORDER

POOLE, District Judge.

Plaintiff Janiece Nolan is a Ph.D. who was formerly employed by the Veterans Administration (VA), assigned to the Martinez, California, hospital. Through her first cause of action she claimed numerous acts of discrimination on the basis of her sex, culminating in her involuntary resignation.

Her second cause of action alleged deprivation of due process rights because of the failure of defendants to process her complaint as an employee grievance pursuant to Section 752 of the Federal Personnel Manual. Jurisdiction is premised on Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–16; 42 U.S.C. § 1981; 28 U.S.C. §§ 1343(4), 2201 and 2202; 5 U.S.C. §§ 701 et seq., 7501 and 7532; and Executive Order 11478.

The parties stipulated that this case might be resolved on cross motions for summary judgment. For reasons to be discussed below, defendants' motion for summary judgment will be granted.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was employed by the VA in several capacities, beginning in 1970 as a research physiologist. In 1972, she applied for the VA's Graduate Education Program (hereafter sometimes GEP), which offered full-time salary and tuition in courses leading to a graduate degree, conditioned on a written commitment of employment with the VA for six years following graduation in such position as the agency might select.

After submitting her application, plaintiff married Robert Nolan, Chief of Staff of the Martinez hospital. The facts adduced indicate that certain agency officials felt that plaintiff's marriage would diminish her mobility after graduation. She was not selected for the Graduate Education Program despite having received the highest ranking in the nation on the competitive examination.

In July 1973, plaintiff filed an equal employment opportunity (EEO) discrimination charge alleging that her nonselection for the GEP was due to her sex. The EEO investigator found that plaintiff's superiors had shown inappropriate concern over her assumed lack of after-marriage mobility and, consequently, that she had been denied selection because of sex bias. EEO processing was not completed; plaintiff withdrew her charge when the VA agreed to appoint plaintiff to the program retroactively, with full back pay. As required by the graduate program, plaintiff agreed in writing to accept assignment at any VA facility and to work for the VA for at least six years after graduation.

In early 1975, anticipating her graduation in June, plaintiff applied to the VA Central Placement Office in Washington for the position of Coordinator of Medical District No. 29, a new position being established as part of an executive reorganization. She also expressed her preference for "staff" rather than "line" positions. As part of this job selection process, evaluations from her supervisors were necessary. Wallace Koseluk, Director of the Martinez hospital, and Paul Battisti, Director of Region Seven,

were asked to submit evaluations of plaintiff to the central office. Mr. Koseluk expressed doubts about plaintiff's ability to work cooperatively with her fellow employees but rated her as "very good." Although Mr. Battisti had worked with plaintiff for a substantial period of time, he refused to forward an evaluation.

On March 30, plaintiff filed a second EEO complaint alleging that the less-than-superior evaluation ("very good") given by Koseluk, and Battisti's failure to make an evaluation, were retaliation for her earlier discrimination charge. This complaint was held in abeyance because it was considered to be premature.

In May, a VA personnel subcommittee met in Washington and recommended four staff positions for plaintiff. These recommendations were rejected by Battisti, who still wished to test plaintiff's mobility. On June 20, 1975, at his urging, plaintiff was offered the position of Assistant Hospital Director Trainee (AHDT) in Palo Alto, a job which could involve frequent transfers. This was a line, not a staff, position and normally would be limited to those who made specific application for the job.

Prior to receiving the AHDT appointment, however, plaintiff had sought and obtained an offer of employment at the University of California Medical School. She began working at the medical school in July. Plaintiff did not tell the VA that she had in fact accepted other employment, but on July 7, she asked to be put on leave without pay, ostensibly until completion of the processing of her second EEO complaint. She stated that she felt that were she to accept any VA appointment prior to resolution or her complaint it might prejudice the investigation or her rights. On July 14, Dr. John Chase, Chief Medical Director of the VA, denied plaintiff's request for leave explaining that applicable regulations did not provide for leave in such situations, and that her EEO investigation would not be prejudiced. Plaintiff thereupon requested reconsideration of her request, stating that otherwise she might be forced into an involuntary resignation. Reconsideration was denied on August 1, 1975.

On August 3, plaintiff submitted her resignation stating that her action was involuntary. Just prior to resigning, she had filed a third EEO complaint alleging that assigning her to the AHDT position and passing her over for the coordinator position had been acts of discrimination and retaliation. In September, plaintiff filed a fourth EEO complaint, asserting that denial of leave without pay was discriminatory and that her resignation was involuntary.

Plaintiff's second, third and fourth complaints were consolidated, and a joint hearing was held in May 1976. The EEO hearing examiner for the VA found that plaintiff's supervisory evaluations, or lack thereof, were motivated by discrimination and that her assignment to the AHDT position resulted from Battisti's retaliatory desire to test her mobility. The examiner did not find that the failure to hire her as coordinator had been discriminatory. As a remedy for this discrimination, the evaluations were removed from plaintiff's file. Since she had already begun to work for the University of California reassignment and back pay were not available. The examiner concluded that plaintiff's other charges were unsupported, and specifically found her resignation to have been voluntary. The VA officially accepted the examiner's findings.

Pursuant to the Federal Personnel Manual, plaintiff appealed the issues of denial of leave and voluntariness of her resignation to the Appeals Review Board of the Civil Service Commission. She did not appeal the finding of non-discrimination in the failure to hire her as coordinator. The Commission affirmed the above findings made by the VA.

In October of 1975, plaintiff had also appealed to the Federal Employees Appeals Authority of the Civil Service Commission because she considered her resignation to be an adverse action within the meaning of FPM § 752. She was advised at that time that federal regulations (5 CFR § 772.-306(a)(2)) require an election of remedies. She elected in writing to proceed with the § 713 EEO appeal and cancel the § 752 appeal.

On July 10, 1978, plaintiff filed the instant action seeking *de novo* review of adverse administrative determinations on the coordinator, denial of leave, and resignation issues, and also appealing defendants' failure to process her § 752 appeal.

## CONCLUSION

■ Title VII is the sole and exclusive remedy for claims of discrimination in federal employment. *Brown v. General Services Administration*, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976). Plaintiff's other jurisdictional allegations must therefore be stricken. Pursuant to 42 U.S.C. § 2000e–16(c), Maxwell Cleland, Administrator of the VA, is the only proper defendant. Other parties defendant named in the complaint must be dismissed.

■ Since plaintiff did not appeal her non-selection as coordinator to the Civil Service Commission, the 30-day limit for filing a civil action, 42 U.S.C. § 2000e–16(c), began to run on August 20, 1976, the date she was notified of the VA's adoption of the EEO examiner's findings. Because the present suit was not filed until almost two years later, this Court lacks subject matter jurisdiction to consider that issue.

■ The Veterans Administration has admitted in its answer to the complaint in this suit that plaintiff was the victim of discrimination and retaliation in the evaluations by her supervisors and in her assignment to an undesired and unsuitable line position. The only remedies available for such discrimination, however, have either already been accomplished or are moot. The Court is therefore unable to provide plaintiff any further relief.

■ The denial of plaintiff's request for leave without pay was not shown to have been discriminatory. Plaintiff has submitted no evidence that Dr. Chase acted unfairly in refusing to grant her request, or that he was biased against her. Her asserted basis for requesting leave of absence— that acceptance of any VA assignment could prejudice her rights with regard to her complaint—was insufficient, because if her charge were later sustained, she would not have been prejudiced by having accepted the unwanted position.

■ Plaintiff's resignation was not the result of agency duress, but was a voluntary act motivated by her acceptance of other employment. There is no clear standard for constructive discharge in a Title VII case. In some situations where "an employee involuntarily resigns in order to escape intolerable and illegal employment requirements," a constructive discharge may be found. *Young v. Southwestern Savings and Loan Association*, 509 F.2d 140, 144 (5th Cir. 1975). Contrary to plaintiff's theory, however, the conclusion of constructive discharge does not automatically arise whenever employment discrimination is followed by the victim's resignation. See e. g., *Muller v. U.S. Steel Corporation*, 509 F.2d 923 (10th Cir. 1975), *cert. denied*, 423 U.S. 825, 96 S.Ct. 39, 46 L.Ed.2d 41 (1975); *Cullari v. East-West Gateway Coordinating Council*, 457 F.Supp. 335 (E.D.Mo.1978). A determination of constructive discharge depends on the totality of circumstances, and must be supported by more than an employee's subjective judgment that working conditions are intolerable. Compare *Calcote v. Texas Educational Foundation*, 578 F.2d 95 (5th Cir. 1978) (employee who was subjected to racial harassment by a supervisor was constructively discharged), with *Muller v. U.S. Steel Corporation, supra*, (discriminatory promotion system did not constitute constructive discharge).

■ In the present case, plaintiff has demonstrated only her subjective opinion of her situation, or possibly her unwillingness to accept an assignment while a less-than-superior evaluation was in her personnel file. She has produced no evidence that the VA coerced her resignation, or that she had no reasonable alternative. Indeed, her acceptance of other employment *prior* to resigning is in direct conflict with her present claim that her resignation was coerced or involuntary. There are thus no factual issues in dispute as to the denial of leave or resignation issues, and defendants are therefore entitled to summary judgment thereon.

Plaintiff's second cause of action (deprivation of procedural due process) is without merit and must be dismissed. She elected to proceed under FPM § 713 rather than § 752, as is provided by federal regulations. There is no due process right to a choice of causes of action or procedures in order to pursue a claim of discrimination. Furthermore, Title VII is the exclusive remedy for discrimination in federal employment, *Brown v. General Services Administration, supra*, and employees must be held to the requirements of implementing regulations. See *Bramley v. Hampton*, 403 F.Supp. 770 (D.D.C.1975).

Accordingly, IT IS ORDERED that jurisdictional allegations other than Title VII, and parties defendant other than Maxwell Cleland, be, and the same hereby are, stricken from the complaint.

IT IS FURTHER ORDERED that defendants' motion for summary judgment be, and the same hereby is, granted.